IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSHUA JAMES ROBERTSON,

        Petitioner,

  vs.                            CIVIL ACTION
                                        No. 09-3077-KHV

RAYMOND ROBERTS, et al.,

        Respondents.

**MEMORANDUM AND ORDER**

This matter is an application for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, a prisoner in state custody, proceeds pro se and in forma pauperis.

**Background**

*Procedural history*

Petitioner was convicted in the District Court of Butler County, Kansas, of one count of first degree murder in violation of K.S.A. § 21-3401(a); arson, in violation of K.S.A. § 21-3718; and aggravated burglary, in violation of K.S.A. § 21-3716.

He was sentenced to a Hard 50 term, 50 years without the possibility of parole, pursuant to K.S.A. § 21-4638. Petitioner's convictions were affirmed on appeal. *State v. Robertson*, 109 P.3d 1174 (Kan. 2005).

Proceeding pro se, petitioner then filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507 in the trial court. The district court initially found the motion lacked merit but appointed counsel to conduct an independent review of petitioner's claims. Following a nonevidentiary hearing, the district court denied relief, and petitioner appealed.

The Kansas Court of Appeals affirmed that decision. *Robertson v. State*, 152 P.3d 110 (Table), 2007 WL 57019 (Kan. Ct. App. 2007)(unpublished decision). The Kansas Supreme Court granted review and affirmed the denial of relief. *Robertson v. State*, 201 P.3d 691 (Kan. 2009).

Petitioner timely commenced this action.

*Factual background*

The following facts were found by the Kansas Supreme Court in petitioner's direct appeal[1]:

> This case began when Roger and Patricia Self's home in Augusta burned, and fire investigators discovered human remains inside. Roger Self was located at his place of employment, but the whereabouts of his wife, Patricia, and the Selfs' adult daughter, Jennifer, who was living with the Selfs, were not immediately known. Because authorities could not make a positive identification of the remains, Officer Drew Reed was dis-

---

[1] These facts are presumed correct on habeas review unless refuted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

patched to locate Jennifer and her boyfriend, defendant Robertson.

Jennifer and Robertson had been dating approximately 1 month before the fire, and Roger described Jennifer as obsessed with the relationship, despite his and his wife's disapproval. Robertson had been permitted to stay the night at the Selfs' home on a couple of occasions earlier in the relationship, but he was no longer welcome to visit after Roger caught him in the same bed with Jennifer.

[...]

Robertson had been living with his grandparents, where he and Jennifer sometimes spent the night. Also approximately 1 week before the fire, defendant's grandmother called Patricia to tell her that she had overheard a disturbing conversation between Robertson and Jennifer. Robertson had said "something about making [Jennifer's] parents disappear."

[...]

At approximately 3:30 on the morning of the murder, Robertson and Jennifer walked to the Selfs' home. They arrived about 5 a.m., shortly after Roger left for work. They had a box cutter and a pocket knife with them and cut the telephone line. After they were unable to enter the house through a window, Jennifer knocked on the door. Her mother answered, and Jennifer rushed inside and started cutting Patricia with a knife. Robertson followed Jennifer, and he and Jennifer got Patricia into a chair and stabbed her. Jennifer retrieved the bread knife from the kitchen and began to stab her mother with it. Robertson described his and Jennifer's actions as "slice, slice, slice; stab, stab, stab."

At some point during the attack, Robertson's left hand was cut. While he and Jennifer attended to his hand, Patricia attempted to escape by crawling toward the front door. Robertson and Jennifer each grabbed one of Patricia's legs and pulled her toward the middle of

3

the living room. Patricia was then lying on her back, making gurgling noises. Robertson and Jennifer stomped on her neck and face until she stopped.

The attack left blood everywhere, according to Robertson. He took a shower, and Jennifer cleaned his boots. Then they placed his bloody clothes on the couch and doused it with alcohol. They took a credit card from Patricia's purse, lit the couch on fire, and left.

Fire investigators later concluded the fire in the Selfs' home was set intentionally with a flammable liquid or accelerant. The bread knife was found under Patricia's hips. The pocket knife was found under the remains of clothing. The box cutter also was found in the debris.

On the morning of the murder and fire, immediately upon being detained, Robertson asked Officer Reed if he was under arrest and if he could have a court-appointed lawyer. Reed had not given *Miranda* warnings to Robertson because he had not intended to question him; he was merely responsible for transporting him to the sheriff's department. Reed advised Robertson that he was not under arrest, that he was only being detained for questioning, and that he should talk to interviewing officers about getting a court-appointed attorney.

Robertson was placed in an interrogation room with an activated video recording device. Reed waited in the room with Robertson but did not question him. During a part of the time the two men waited for other investigators to arrive, emergency medical technicians treated Robertson's hand. Robertson made repeated remarks to Reed about his love for Jennifer and her motive for committing the crime. He asked Reed about the case and asked again if he would be appointed an attorney. Robertson also asked what the charges were and what the bond would be. Reed again responded that defendant would have to wait for the interviewing officers to find out more information and that he did not know if there were any charges. Defendant then

asked Reed what the bond was for premeditated murder. Reed responded that he did not know.

When investigating officer Kelly Herzet arrived, Reed left. Reed did not tell Herzet that Robertson had requested a court-appointed attorney. Herzet also did not know that the remains had been or would be identified as Patricia.

Before Herzet could ask Robertson his name, Robertson said: "What's the motive? I tried to stop her. She cut my hand through my gloves. What was her motive?" Robertson asked again about a court-appointed attorney and said immediately that Jennifer had cut the phone line. Herzet interrupted defendant and asked his name, but defendant kept talking. Herzet then pulled out a form so that he could go over the *Miranda* rights with Robertson. Robertson told Herzet that he was not going to sign a waiver and that he wanted a lawyer present. Before Herzet could say anything, Robertson said that his girlfriend had "pulled some stunt" today, that he had gotten cut, and that he was "just an acquaintance, or an accomplice, I don't know." Herzet then said, "We need to talk about that," and Robertson said, "I can't speak until I have an attorney." Herzet responded: "OK."

Robertson then began talking again, remarking that he loved someone "so much." Herzet asked him who he was talking about, and Robertson said "Jennifer." Herzet then said he needed to read the rights form, which would protect Robertson. He also told Robertson that he could mark the form to document that he did not want to talk to law enforcement without an attorney. Herzet specifically said that marking the form would not mean that Robertson had to talk to him. Robertson continued talking despite his expressed intention to wait for an attorney. He told Herzet that he had marked the form to say he would talk but "whether or not I decide to answer certain questions is my decision." Herzet responded, "That is so correct." The form had been signed within 5 minutes of Herzet arriving to talk to defendant.

Herzet then interviewed Robertson for approximately 4 hours. The officer brought Robertson lunch, gave him a soda break, and gave him restroom breaks whenever Robertson needed to do so. Herzet also asked Robertson several times if he needed to go to the hospital for further treatment of his hand, but defendant said he did not need to go. Herzet testified later that Robertson never refused to talk. Sometimes, he would state, "I'll take it up with the Judge," but Herzet understood that Robertson wanted to continue the interview. Robertson ultimately described the crimes, claiming they were primarily Jennifer's fault. He was then arrested.

A third officer, Glenn Hopper, arrived to assist Herzet and to take Robertson to the hospital. Hopper placed Robertson in handcuffs and recited the *Miranda* warnings because Robertson kept saying that he was being charged with first-degree murder. While en route to the hospital, Robertson kept asking Hopper, "Where is your evidence?" Hopper did not question Robertson. Finally, after being asked repeatedly about evidence, Hopper replied that a body was found at the burned house, and this was the evidence. Robertson then said, "First-degree murder? I was just helping my girlfriend. I was just with my girlfriend." Hopper then gave Robertson the *Miranda* warnings again.

When Hopper and Robertson arrived at the hospital, defendant continued talking. [...] Robertson began adding details to his descriptions, and Hopper again *Mirandized* him. [...] Robertson then asked Hopper if telling Hopper what had happened would help his case. Hopper again advised Robertson of his rights and said he should tell the truth if [he] was going to say anything. Robertson then began to describe the morning's events, but Hopper interrupted, asking him if he wanted to write his statement down. Hopper could not write as fast as Robertson was talking. Robertson agreed to write his statement, which reads:

"Jennifer and I walked to her home. She cut the phone line. She then tryed [*sic*] all the doors to get in to her home. She then knocked on the door, her mom opened it. She rushed her mom with a box cutter. She then went to the kitchen to get a bigger knife. Her mom

tryed [*sic]* to crawl out of the house. Jennifer then
started stabing [*sic* ] her mom, I tryed [*sic* ] to take
the big knife from Jennifer and got my left hand cut.
I then spaced out and stabed [sic] her mom 2 or 3
times with the big knife. Her mom was gurgling or
chocking [*sic* ] on blood. Jennifer then stomped her
mom in the face and throat. Her mom stoped [*sic*]
gurgling or chocking [*sic*] on blood. Jennifer then
told me to stomp her mom, I did not check the pulse
before I started to stomp her mom but I think that she
was dead when I started to stomp her mom because I did
not hear any gurgling or chocking [*sic*] when I
started. [Signed,] Josh Robertson."

## Discussion

*Standard of review*

The court's review of petitioner's habeas claims is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, when a state court has adjudicated a claim, a federal habeas court may grant relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §2254(d); *Williams v. Taylor,* 529 U.S. 362, 402 (2000); *Neill v. Gibson,* 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied

7

the federal law in an objectively reasonable manner. *See Bell v. Cone,* 535 U.S. 685, 699 (2002); *Hooper v. Mullin,* 314 F.3d 1162, 1169 (10th Cir. 2002).

*The claims*

Petitioner seeks relief on the following grounds:

(1) his rights under the Fifth Amendment were violated by the admission at trial of his statements to law enforcement officers;

(2) his trial counsel provided ineffective assistance by failing to investigate and seek the suppression of petitioner's statements to law enforcement;

(3) his appellate counsel provided ineffective assistance by failing to pursue claims of an illegal seizure or arrest and by failing to assert a claim on appeal of ineffective assistance by petitioner's trial counsel;

(4) he was denied a fair trial by the admission of perjured testimony by a state witness;

(5) his rights under the Fourth Amendment were denied by an unlawful seizure.

*a. Admission of statements to law enforcement*

Petitioner seeks relief on the ground that his out-of-court statements made to law enforcement officers were obtained in violation of the Fifth Amendment privilege against self-incrimination.

Under *Miranda v. Arizona,* 384 U.S. 436 (1966), statements made during a custodial interrogation are inadmissible if

8

officers fail to warn a defendant of this constitutional right before a custodial interrogation. Such an interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.,* 384 U.S. at 444.

The Kansas Supreme Court rejected petitioner's Fifth Amendment claim and thoroughly discussed the trial court's determination that his oral and written statements were voluntary:

> Under the facts of this case, Robertson made repeated requests for a lawyer, and [Detective] Herzet demonstrated by his responses that he understood Robertson desired a lawyer's assistance. Although it was not completely clear that Robertson wanted a lawyer to be present for interrogation rather than later proceedings, we hold there was a valid waiver regardless.
>
> As the district court recognized, before Herzet asked Robertson a single question about the crime, Robertson was blaming Jennifer and questioning her motive. Indeed, every time Robertson mentioned an attorney, he spontaneously reinitiated conversation with the officers about the crime. Specifically, after Herzet was finally able to deliver the *Miranda* warnings, Robertson disclosed how he and Jennifer set the fire. This disclosure was not prompted by questioning from Herzet. Herzet then asked Robertson if he wanted to continue talking about the case. Robertson responded that he had signed the *Miranda* form and would speak with Herzet but might not answer all of his questions. He also advised Herzet that he had been arrested before and therefore understood his *Miranda* rights and his ability to waive them.

> We conclude under the totality of the circumstances that the facts found by the trial court were supported by substantial competent evidence, and we arrive at the independent legal conclusion that Robertson's motion to suppress his statement to Herzet was properly denied.
>
> We are of a similar mind regarding Robertson's oral statement to [Detective] Hopper and his written statement. Robertson received his *Miranda* warnings from Hopper time and time again. In the face of those warnings, his behavior virtually defined the old phrase, "a compulsion to confess." Robertson repeatedly reinitiated general discussion of the offense and his role in it. Hopper, finally, merely cautioned Robertson to tell the truth. Again, under the totality of the circumstances, we see substantial competent evidence to support the district court's factual findings and are satisfied that, as a matter of law, Robertson's motion to suppress his oral statement to Hopper and his written statement merited denial. *State v. Robertson*, 109 P.3d 1174, 1184 (Kan. 2005).

This court has reviewed the state court decisions and has examined the state court records and videotaped interviews of petitioner conducted by law enforcement. The court agrees there is substantial evidence to support the determination that petitioner voluntarily waived his right to remain silent after being given repeated *Miranda* warnings. Likewise, the Kansas Supreme Court reasonably applied established federal law in its analysis of this claim. Petitioner's assertion that he was pressured into waiving his rights is not supported by the record, and he is not entitled to habeas relief on this claim.

*b. Ineffective assistance of trial and appellate counsel*

Petitioner asserts his trial counsel provided ineffective assistance by failing to pursue a competency evaluation to support suppression of his self-incriminating statements and by failing to challenge his custody and the seizure of his clothing, wallet, and boots.

He assets that his appellate counsel was ineffective by failing to present the issue of the arrest and seizure on direct appeal.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), an attorney provides ineffective assistance when the representation offered does not meet "an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Kansas Court of Appeals considered these claims on appeal from the denial of petitioner's post-conviction action. As summarized by the Kansas Supreme Court, the findings were:

> First, the panel concluded Robertson's trial counsel was not constitutionally ineffective for failing to demand a competency evaluation to challenge the voluntariness of Robertson's confession. Trial counsel had argued that the confession was not voluntary; the district court held that it was; and that ruling was upheld ... on direct appeal. Moreover, Robertson alleged no mental illness, and a mental health evaluation was not justified merely on the

11

> strength of Robertson's assertion that he had felt pressured during the interrogation. [citation omitted]
>
> Second, the panel concluded that trial and appellate counsel were not ineffective for failing to raise a Fourth Amendment challenge to Robertson's arrest based on *Terry*, 392 U.S. at 30-31...(officer may detain person in public place on reasonable suspicion that person committing, has committed, about to commit crime). Robertson failed to explain the substance of his claim; failed to show why counsel was ineffective for failing to object or raise such a challenge; and did not address why the district judge erred in rejecting this argument. Moreover, the panel concluded that the argument was without merit because Robertson's warrantless public arrest was not a *Terry* stop and did not violate the Fourth Amendment. The officer who seized Robertson had probable cause to arrest him, and "neither trial nor appellate counsel could be considered ineffective for failing to raise an issue that would not have been successful." [*State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 (2006)].
>
> *Robertson v. State*, 201 P.3d 691, 696 (Kan. 2009).

In reviewing the claim of ineffective assistance by trial counsel, the Kansas Supreme Court found that counsel filed a motion for a competency determination early in the case against petitioner and that the district court found petitioner competent. Likewise, in the suppression motion, trial counsel pursued the issue of petitioner's medical or mental capacity at the time of his statements to police and introduced the videotaped interrogation in support of that argument. The trial court held that while petitioner was in pain and distraught during questioning, he was "cogent, conversant and in touch with reality." *Robertson*, 201 P.3d at 698.

These findings are supported by the record, and the Kansas Supreme Court applied the correct legal standards. It is apparent trial counsel pursued defenses based upon petitioner's mental state but was unsuccessful. Petitioner's claim of ineffective assistance lacks merit.

Petitioner also claims his appellate counsel was ineffective in failing to challenge his illegal seizure and in failing to pursue claims of ineffective assistance against trial counsel.

Because the court has concluded trial counsel provided effective assistance, it rejects the claim that appellate counsel erred in failing to challenge trial counsel's performance.

The facts relevant to the petitioner's detention were summarized by the Kansas Court of Appeals:

> On March 19, 2002, around noon, Officer Drew Reed was dispatched to locate Robertson and his girlfriend, Jennifer Self, the victim's daughter. Earlier that day, police officers had contacted Robertson and Jennifer and they had lied about their names. Bob Chorn, an acquaintance of the Selfs, told law enforcement that he saw Robertson and Jennifer on the morning of the fire. When Chorn told Jennifer about the fire, she only said "okay" and she and Robertson refused a ride back to the house.
>
> Reed eventually found two people matching Robertson and Jennifer's description and he later confirmed Robertson's identify from his ID and social security card. Robertson initially lied about having any ID,

> and Reed noticed that his left hand was bleeding and bandaged with paper towels and he was wearing two pairs of pants. By this point, the authorities were aware that there was a fire at the Self home and human remains were in the fire. There was reason to believe murder had occurred as a bread knife was found under the body. *Robertson v. Self*, 152 P.3d 110, 2007 WL 570179, *3 (Kan. App. 2007).

The Kansas Court of Appeals determined these circumstances were sufficient to support a finding of probable cause. On review, the Kansas Supreme Court held that petitioner had failed to preserve the issue in district court and had not demonstrated exceptional circumstances that would allow him to pursue the Fourth Amendment claim in a post-conviction action. *Robertson*, 201 P.3d at 699.

The decision of the Kansas Supreme Court regarding procedural default presents an independent and adequate state ground that bars federal review. "In a habeas proceeding, we do not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless cause and prejudice or a fundamental miscarriage of justice is shown." *Maes v. Thomas,* 46 F.3d 979, 985 (10th Cir. 1995)(citing *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). An independent and adequate procedural ground is one arising under state law and one that has been consistently applied in the state courts. *Sherrill v. Hargett*, 184 F.3d 1172, 1174 (10th Cir. 1999).

To overcome the bar by showing cause and prejudice for the default, petitioner must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. See *Murray v.. Carrier,* 477 U.S. 478, 488 (1986); *United States v. Salazar,* 323 F.3d 852, 855 (10th Cir. 2003). In the alternative, to demonstrate a fundamental miscarriage of justice, petitioner must make a colorable showing of factual innocence. *Moore v. Reynolds,* 153 F.3d 1086, 1097 (10th Cir. 1998)(citing *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1998)). Petitioner has not satisfied either showing, and therefore, his claim is procedurally barred.

Moreover, even if this court could reach his claim of ineffective assistance of appellate counsel, he would not prevail. When considering a claim that counsel erred by failing to present a claim, the habeas court must consider the merits of the underlying claim. *Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999). Only if the issue has merit does the habeas court apply *Strickland* to determine if appellate counsel provided ineffective assistance. *Id.*

The Fourth Amendment protects citizens from "unreasonable searches and seizures" by government officials. U.S. Const., amend. IV; *see Mapp v. Ohio,* 367 U.S. 643, 655 (1961). The United States Supreme Court has identified "three types of

police-citizen encounters[:] '(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.'" *United States v. Brown,* 496 F.3d 1070, 1074 (10th Cir. 2007)(quoting *United States v. Davis,* 94 F.3d 1465, 1467-68 (10th Cir. 1996)).

The decision of the Kansas Court of Appeals that the seizure of petitioner was supported by probable cause clearly is reasonable. The circumstances of this matter gave law enforcement a constitutionally adequate basis to detain petitioner for investigation, and the failure to pursue this issue would not support a claim of ineffective assistance of counsel.

*c. Denial of fair trial by perjured testimony*

Petitioner claims he was denied a fair trial due to allegedly perjured testimony by a state witness concerning a conversation between petitioner and Jennifer about making her parents "disappear."

This claim was presented in petitioner's motion filed pursuant to K.S.A. 60-1507. The trial court summarily dismissed the claim, and the decision of the Kansas Court of Appeals

16

states petitioner pursued only two of the original eight grounds on appeal, namely, claims of ineffective assistance of counsel by his trial and appellate attorneys. *Robertson v. State*, 2007 WL 570179, *2. The Kansas Supreme Court determined the claim "was subject to summary dismissal by the district court.... [I]t too should have been raised in Robertson's direct appeal; it was not, without excuse." *Robertson v. State*, 201 P.3d at 697.

As discussed above, petitioner may proceed on this defaulted claim only if he establishes cause and prejudice or a fundamental miscarriage of justice. No such showing has been made, and the court finds no legal basis to reach the merits of this claim.

*d. Claim of unlawful seizure*

Petitioner's final ground for relief presents a generalized claim under the Fourth Amendment regarding unlawful seizure. As discussed in the analysis of petitioner's claim of ineffective assistance of counsel, petitioner's claim was not presented in the state courts and is procedurally barred. Likewise, as set forth in that discussion, the Fourth Amendment claim lacks merit on the facts established in the record.

**Conclusion**

Petitioner's claims concerning the admission of his out-of-court statements to law enforcement officers and ineffective

17

assistance of counsel were reasonably resolved by the state courts.  His claims alleging the denial of a fair trial due to the allegedly perjured testimony of a state witness and an unlawful seizure under the Fourth Amendment were procedurally defaulted in the state courts.  Petitioner has shown neither cause and prejudice for the default nor a fundamental miscarriage of justice arising from the defaults, and the claims cannot be considered in habeas corpus.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED**.

Dated at Kansas City, Kansas, this 23rd day of November, 2009.

S/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge